## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIA LEARNING CENTER, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.  05-5178 |
| EMPIRE FIRE AND MARINE INSURANCE | : | |
| COMPANIES | : | |

## MEMORANDUM RE: MOTION FOR JUDGMENT ON THE PLEADINGS

Baylson, J.                                                    October 1, 2009

Presently before this Court is Defendant's Motion for Judgment on the Pleadings.

Plaintiffs NIA Learning Center ("NIA"), Carol Lloyd ("Lloyd"), and Karla Cruel ("Cruel") allege

bad faith, breach of contract, unfair practices, violation of Pennsylvania's Unfair Trade Practices

and Consumer Protection Law, and fraud against their insurance company, Empire Fire and

Marine Insurance Companies ("Empire"), arising out of a car accident in 2002 and Defendant's

subsequent settlement of two claims leading to exhaustion of NIA's policy limit.  For the

foregoing reasons, Defendant's Motion will be granted.

## I.      Factual Background and Procedural History

### A.      Facts

On February 21, 2002, Plaintiff Cruel, an "agent, servant and/or employee of [NIA],

acting within the course and scope of such agency and/or employment," was driving a vehicle

owned by NIA and was involved in an accident with Kimberly Stewart.  (Compl. ¶¶ 4, 9.)  As a

result of the accident Stewart's vehicle was damaged and a pedestrian, Aaron Jones, was struck

and injured.  (Compl. ¶¶ 10, 11.)

At the time of the accident, NIA was insured by Defendant Empire under a commercial

-1-

automobile policy, policy number CL270162. (Compl. ¶ 7, Ex. A.) The policy "provided coverage in the amount of $100,000 for all claims arising out of the same accident." (Compl. ¶ 12). The policy Declarations page states that the limit is "$100,000 CSL," which Defendant maintains is commonly known in the insurance industry to mean "Combined Single Limit" and included both property damage and bodily injury liability. (Def.'s Mot. J. Pleadings ¶ 4.) The policy states as follows with regards to the policy limit:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

> Regardless of the number of covered "autos", "insured", premiums paid, claims made or vehicles involved in the "accident," the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident' is the Limit of Insurance for Liability Coverage shown in the Declarations.

(Def.'s Mot. J. Pleadings Ex. A 26, 30 §§ II.A,C.)[1] (emphasis added).

After the accident, Plaintiffs allege that Defendant "voluntarily exhausted the policy limits by paying a total of $100,000 to settle the personal injury claims of Aaron Jones and the property damage claim brought by Kimberly Stewart." (Compl. ¶ 14.) Defendant's brief specifies that on April 5, 2002, Stewart's car insurance company, Progressive Insurance, made a

---

[1]The insurance policy was also attached as an exhibit to Plaintiffs' Complaint. However, the "Business Auto Coverage Form," which describes the terms and limits of the policy and contains the language quoted above, was not included in Plaintiffs' Exhibit. Plaintiff does not dispute that the "Business Auto Coverage Form" was a part of the policy.

subrogation claim, which Defendant settled for approximately $13,000 on May 8, 2002. (Def.'s

Memo. Law Support Mot. J. Pleadings 2.) In addition, on July 29, 2002, a "policy limits"

demand was made on behalf of pedestrian Jones, a minor, based on $43,000 of medical bills he

incurred from the accident. Defendant paid $87,739.68 to Jones for his bodily injuries and

obtained a joint tortfeasor release executed November 14, 2002. (Id.) Plaintiff alleges that

Defendant voluntarily exhausted the policy limit "despite the fact that it knew or should have

known that there were other potential claims," thereby "knowingly and intentionally exposing its

insured to loss that would not be indemnified under the policy." (Compl. ¶ 15-16.)

About two years after the accident, on February 19, 2004, Stewart sued NIA and

employee Cruel for personal injury damages from the accident in a suit, Stewart v. NIA, Inc., et

al., filed in the Philadelphia County Court of Common Pleas. (Compl. ¶ 17, Ex. B.) Defendant

received notice of the suit, and on March 17, 2004, Defendant sent a letter to NIA and Cruel that

it would not provide a defense to Plaintiffs in the lawsuit. (Compl. ¶¶ 19, 20.) On March 24,

2004, after being contacted by NIA's corporate counsel, Defendant again refused to provide a

defense. (Compl. ¶ 23.) NIA then retained private counsel to defend the suit. (Compl. ¶ 24.)

Stewart filed an Amended Complaint on August 5, 2004, which added Lloyd[2] as a defendant in

her lawsuit. (Compl. ¶ 25.)

On November 12, 2004, Stewart was awarded $20,000 in arbitration against Cruel only;

the arbitrator found in favor of NIA and Lloyd. (Compl. ¶ 31.) On March 3, 2005, Stewart filed

a Praecipe to Take Judgment Upon Award of Arbitrators. (Compl. ¶ 33, Ex. I.) Plaintiffs allege

that "Stewart would not have prevailed at the arbitration and obtained a judgment in her favor

---

[2]Although not alleged in the Complaint, Lloyd is the owner of NIA.

and against Cruel, if Defendant had presented a defense to Cruel." (Compl. ¶ 34.) As a result, there is a $20,000 judgment against Cruel, and NIA and Lloyd incurred attorney fees. (Compl. ¶ 36.)

### B.    Procedural History

Plaintiffs' Complaint was filed in the Court of Common Pleas, Philadelphia County in July 2005. Plaintiffs allege the following claims: bad faith under the Pennsylvania Bad Faith Insurance Statute, 42 Pa.C.S.A. § 8371 (Count I), breach of contract (Count II), violation of the Unfair Practices and Consumer Protection Law (Count III), and fraud (Count IV). Defendant removed the case to federal court on September 29, 2005 (Doc. No. 1) and answered the Complaint on October 11, 2005 (Doc. No. 2).

Defendant filed this Motion for Judgment on the Pleadings on February 24, 2006 (Doc. Nos. 9, 10). Plaintiffs responded on March 14, 2006 (Doc. No. 11). Defendant replied on March 16, 2006 (Doc. No. 12), and Plaintiffs filed a sur-reply on March 27, 2006 (Doc. No. 13). Defendant filed a supplemental memo on November 8, 2006 (Doc. No. 14), to which Plaintiffs responded on November 9, 2006 (Doc. No. 15).

The case was reassigned to the undersigned on April 28, 2009 (Doc. No. 16). Due to the significant lapse of time since this Motion was briefed, the undersigned ordered supplemental letter briefs on any updated caselaw on May 8, 2009 (Doc. No. 20).

The Court held oral argument on the Motion on June 8, 2009. At the hearing, and in a subsequent Order dated June 12, 2009 (Doc. No. 24), the Court required Defendant to produce promptly its claims file, its claims log and other documents on its disposition of the claims made and requested, allow Plaintiffs to serve interrogatories, and required Plaintiffs to file a brief on

-4-

what prima facie evidence of bad faith, if any, they found in the Defendant's documents or answers to interrogatories and whether Plaintiffs requested additional discovery. In that Order, the Defendant's Motion for Judgment on the Pleadings was denied without prejudice.

Plaintiffs filed their brief on August 26, 2009 (Doc. No. 27), and the Defendant's brief was filed pursuant to an unopposed extension of time on September 24, 2009. The Court will consider Defendant's Motion for Judgment on the Pleadings as refiled.

## II. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. Plaintiffs are residents of Pennsylvania and Defendant is incorporated and with its principal place of business in Nebraska. (Compl. ¶¶ 1-5; Notice of Removal ¶ 5.) Defendant alleges a good faith belief that the amount in controversy exceeds $75,000 based on damages claimed in the Complaint. (Notice of Removal ¶ 6.)

## III. Parties' Contentions

### A. Defendant's Motion

Defendant argues that Plaintiffs' entire claim should be dismissed because its duty to defend and indemnify was terminated when Plaintiffs' policy limit was exhausted based on the explicit language in the insurance policy concerning Defendant's duty. Defendant claims that Pennsylvania law has adopted the "first in time, first in right" doctrine, whereby it is valid for an insurer to settle claims piecemeal even though this may reduce or exhaust the policy limit. This doctrine further stands for the proposition that an insurer do not have to wait for all potential claims arising out of an accident to be filed before it may settle certain claims. Defendant cites two state court cases for the adoption of this proposition and the additional proposition that an

insurer may withdraw its defense "mid-course" of the underlying litigation as long as the insured
is not prejudiced. Defendant also cites to two Third Circuit cases that have adopted this
proposition.

Defendant further describes the implied duty of good faith that all insurers must comply
with before their duty to defend may be terminated. Defendant argues that it has clearly met that
duty in this case.

### B. Plaintiffs' Response

Plaintiffs argue that multiple factual issues exist such that the motion for judgment on the
pleadings cannot be granted.

First, Plaintiffs argue that the policy limit may not be $100,000, and thus, the policy may
not be exhausted. Plaintiffs base this argument on Jones's potential entitlement to first-party
medical benefit benefits under the policy, which would constitute $5,000 on top of the $100,000
limit. Further, Plaintiffs argue that all Pennsylvania policies must include $5,000 in property
damage coverage, which would also be on top of the limit. Finally, Plaintiffs claim that
"$100,000 CSL" is not defined in the policy and is therefore ambiguous as to its meaning
regarding the policy limit.

Second, Plaintiffs argue that many factual issues exist as to Defendant's good faith in
settling the Stewart property damage and Jones bodily injury claims. Because the Complaint
alleges that Defendant knew or should have known of additional claims, factual discovery is
necessary concerning what Defendant knew at the time of settlement, when Defendant settled,
the reasonableness of Defendant's investigation of the claims, and the reasonableness of the

settlements.  Based on the standard for a statutory bad faith claim, Plaintiffs argue that

Defendant's good faith is an issue of intent, which is a factual inquiry.

Third, Plaintiffs argue that there is a factual issue about whether the policy in existence at

the time of the accident was a renewal policy or, instead, was the original policy issued.  If the

policy is a renewal policy, it may not be enforceable if the insured was not notified of the renewal

and understood it.

Finally, Plaintiffs argue that factual issues exist as to releases obtained in settling the first

two claims.  Plaintiffs want fact discovery on the nature of the release received by Jones and

whether or not Stewart received a release.

### C.      **Reply and Supplemental Briefings**

Defendant's reply brief and the parties' supplemental briefings contest which legal

standard should apply in evaluating Plaintiffs' bad faith claim.

Defendant argues that the statutory bad faith standard, which considers the reasonableness

of an insurer's investigation into settling claims among other factors, does not apply, since it has

not been utilized by any court applying Pennsylvania law in the factual situation at issue in this

case, i.e. where the issue is the speed or reasonableness of an insurer's liability settlement with a

third-party claimant.  Instead, Defendant argues that the implied duty of good faith standard

should be applied because it has previously been used by Pennsylvania courts in cases with

similar fact patterns.  Under this standard, there are no factual issues regarding Defendant's good

faith and Plaintiffs' Complaint can be evaluated as a matter of law.  Defendant further argues that

there are no factual issues concerning the policy's combined single limit of $100,000 or the

effective policy.

Plaintiffs continue to argue that under the statutory bad faith standard that applies to its claims, multiple factual issues exist as to Defendant's good faith, and therefore the motion must be denied. Plaintiffs analogize the factual situation in this case to an "excess verdict" case, in which the statutory bad faith standard has been applied. In addition, Plaintiffs argue that there are not two different bad faith standards, and that the Pennsylvania bad faith statute merely provides specific remedies for violation of the implied duty of good faith that exists in all insurance contracts.

After the discovery, as allowed by the Court's Order of June 12, 2009, was completed, Plaintiffs filed an additional brief also pursuant to the Court's Order of June 12, 2009 (Doc. No. 27) in which they initially detail the facts established in response to the discovery. Plaintiffs argue the following four points:

1.      Empire knew as of March 28, 2002 that Kimberly Stewart had been injured in the accident. NIA argued that Empire knew that Ms. Stewart was injured and was a potential claimant, but never completed its investigation to determine the nature or extent of those injuries.

2.      Empire knew there were issues as to whether NIA's Carla Cruel or the other driver, Ms. Stewart, was at fault for the accident, and thus, Empire should not have paid Ms. Stewart's property damage claim before resolving those issues. NIA argued that:

        a.      Empire had serious questions about whether Ms. Cruel or the other driver was at fault;

        b.      Empire knew there could be multiple claimants competing for limited coverage, and Empire's duty of good faith required contesting any questionable claim that could consume some of that coverage – including Ms. Stewart's property damage claim;

        c.      The joint and several liability analysis relied on by Empire to pay Aaron Jones' (the injured pedestrian's) bodily injury claim does not apply to Ms. Stewart's property damage claim;

        d.      There was no reasonable basis for Empire to pay the property damage subrogation claims of Progressive (Ms. Stewart's insurer) when it knew that NIA only had $100,000 in liability coverage, and that additional claims could be made by persons other than Mr. Jones.

     3.      Empire knew, when it paid Mr. Jones' claim and exhausted the $100,000 liability limit, that Ms. Stewart could make a bodily injury claim that would expose NIA to personal liability.  NIA argued that:

        a.      Empire was aware of the potential for a bodily injury claim by Ms. Stewart, and researched its obligations to NIA under these circumstances;

        b.      Empire's August 28, 2002 authorization to settle with Mr. Jones for $86,739.68 was not made with NIA's best interests in mind;

        c.      Empire paid Mr. Jones' claim to avoid paying litigation costs and other loss adjustment expenses it would have incurred if it litigated or otherwise delayed resolution of the Jones claim long enough to determine whether there would be other bodily injury claimants;

        d.      When Empire received Ms. Stewart's bodily injury claim on February 7, 2003, Empire noted that Ms. Stewart had never surfaced for injury prior to that date, an untrue statement because Empire learned about Ms. Stewart's injuries as early as March 28, 2002;

        e.      Empire's duty of good faith prohibited it from paying the full policy limits to the first claimant "simply to exhaust the limits and thereby relieve itself of the duty to defend

any further claims" because Empire knew that Ms. Stewart and the eight children in the NIA van were potential claimants.

4.     Empire, after improperly exhausting NIA's coverage limits by (1) paying Ms. Stewart's property damage claim without questioning liability and (2) paying Mr. Jones' bodily injury claim without investigating the likelihood of other injury claims, subsequently refused to provide a defense to NIA against Ms. Stewart's injury claim, even though Empire knew that the claim probably could be defeated and that Ms. Stewart would have to prosecute her claim because she had no Uninsured Motorist Benefits ("UIM Benefits").  NIA argues that:

a.     On February 10, 2003, Empire called Ms. Stewart's insurer, Progressive, and learned that Stewart had no UM or UIM coverage and had exhausted her first party medical benefits of $5,000;

b.     thus, Empire knew Ms. Stewart's claim could be defended on the basis of her liability for the accident and her limited tort selection if Defendant provided a defense to NIA;

c.     On February 19, 2003, Empire sent a letter to Ms. Stewart's lawyer informing him that NIA's coverage limits were exhausted and that Ms. Stewart should seek recovery from her UM coverage, even though Empire had learned that Ms. Stewart had no UM coverage.

On September 25, 2009, Defendant filed its response to Plaintiff's brief pursuant to the Court's Order of June 12, 2009 (Doc. No. 31).  Defendant's position is that its claims file conclusively demonstrates it did not "rush" to pay out the $100,000 in policy limits based on any alleged self interest.  Defendant notes that the accident occurred almost one year before the

Stewart claim was presented, and that Defendant settled the Stewart property damage claim for approximately $13,000 more than eight months before the Stewart claim was presented; further, Defendant settled the Jones bodily injury claim for approximately $84,000 more than three months before the Stewart claim was presented. Defendant was under no duty to seek out potential claimants to ask them to present claims or file lawsuits against insureds, and was not required to wait until the expiration of all possible statute of limitation periods before settling claims.

Defendant also responds that Plaintiffs failed to provide the Court with any evidence of bad faith. Defendant contends that its claims handling process in this case illustrates that it appropriately investigated and evaluated the claims and then made appropriate claims decisions. Defendant produced to Plaintiffs a copy of its claims file, which contained the "log notes," and also a copy of the "first party" file. The liability evaluation was reviewed by multiple claims personnel at Empire. Additionally, Defendant sought and obtained a legal opinion as to whether it had a duty to defend NIA and Cruel for the Stewart action under the Empire policy after the liability limits were exhausted by prior settlements. Thus, Defendant contends that it thoroughly investigated the case and acted in good faith when it made appropriate claims handling decisions.

## IV.  **Legal Standard**

The Court may only grant a motion under Federal Rule of Civil Procedure 12(c) if "the movant clearly establishes that no material issues of fact remains to be resolved and that he is entitled to judgment as a matter of law." Nesmith v. Independence Blue Cross, 2004 WL 253524, at *3 (E.D. Pa. Feb. 10, 2004) (quoting Corestates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 193 (3d Cir. 1999)). In deciding a motion for judgment on the pleadings under Rule

12(c), the court uses the same standard as when deciding a motion to dismiss under Rule 12(b)(6).  Id. (citing Constitution Bank v. DiMarco, 815 F. Supp. 1154 (E.D. Pa. 1993)).  Thus, the motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998).  The Court must also accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the nonmoving party.  Consol. Rail Corp. v. Portlight Inc., 188 F.3d 93, 94 (3d Cir. 1999).

Similarly, as in a 12(b)(6) motion, the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994); see also U.S. Fidelity & Guaranty Co. v. Tierney Assocs., Inc., 213 F. Supp. 2d 468, 470 n.2 (M.D. Pa. 2002) ("Consideration of the content of documents to which a complaint makes reference in deciding a Rule 12 motion is, of course, appropriate.").

**V.**     **Discussion**

   **A.**     **Insurer's Duty to Defend**

An insurance company's duty to defend and indemnify, once invoked, is not limitless.  "If, at the outset of a particular action, it is properly established that the insurer cannot possibly be liable for indemnification because policy limits have been exhausted, then the policy language does not impose a duty to defend that action under Pennsylvania law."  ACandS, Inc. v. Aetna Casualty & Sur. Co., 764 F.2d 968, 975 (3d Cir. 1985); see also  Commercial Union Ins. Co. v. Pittsburgh Corning Corp., 789 F.2d 214, 218 (3d Cir. 1986) (finding insurer had no duty to defend actions after its policy limit was exhausted).  Where, as here, the insurance policy

language explicitly states that the duty to defend terminates at the exhaustion of the policy limit, the insurer is no longer required to defend additional claims.

     1.    **Implied Duty of Good Faith**

An insurer's termination of its duty to defend, like all transactions between insurer and insured, requires the insurer to have acted in good faith. See Maguire v. Ohio Cas. Co., 602 A.2d 893, 895 (Pa. Super. 1992), appeal denied, 615 A.2d 1312 (Pa. 1992); Anglo-American Ins. Co. v. Molin, 670 A.2d 194, 197 (Pa. Commw. Ct. 1995).

The Pennsylvania Superior Court described this good faith standard in Maguire, a case with facts very similar to those in the present case. In Maguire, the court granted the defendant insurer's motion for judgment on the pleadings where the insurer refused to defend its insured against additional third-party claims arising from a single accident after the insurer had paid its policy limit to settle an initial claim. The court first found that the policy language unambiguously stated that the insurer's duty to settle or defend ended when the limit of liability was exhausted.

The Maguire court went on to describe the good faith obligation that accompanies an insurer's withdrawal from defending a claim. The court stated that the insurer should not enter into a dubious release to quickly exhaust its policy limit, should time its withdrawal from litigation as to not prejudice the insured, and may not exhaust its policy limit in order to avoid its duty to defend. Id. at 896; see also Commercial Union, 789 F.2d at 220 (finding no duty to defend after the policy limit was exhausted and the insurer made an "orderly withdrawal from the insured's defense"). The court further noted that failure to obtain a release for the insured when settling claims "raises serious questions as to whether the insurer has discharged its policy

-13-

obligations in good faith." Id. (quoting Pareti v. Sentry Indem. Co., 536 So.2d 417 (La. 1988)). The Maguire court found that the insurer had exercised good faith because its initial settlement for policy limits occurred before the subsequent lawsuit was filed and because the insurer obtained releases for the insured to protect it against further claims. Id.

In Molin, the court further developed the standard for good faith termination of a defense upon exhaustion of the policy limit. In that case, which involved multiple insured parties, the insurer withdrew its defense of all insured parties "mid-course," i.e. while an existing lawsuit remained pending that exposed the non-settling insureds to liability. The court found the insurer's actions proper where no parties alleged that the insurer had acted in bad faith, including no objections that proposed settlements were unreasonable. Id. at 199. "[T]he insurer's duty to act in good faith does not require it to disregard its interests in order to make those of the insured paramount." Id. at 197. In reviewing the insurer's obligation, the court noted "the dilemma faced by an insurer when faced with a reasonable settlement offer for less than all of the insureds." Id. at 199. In this "dilemma" – which Defendant describes as an insurer's "catch-22" – the insurer has a duty to settle claims where it receives reasonable offers to do so, although settling may exhaust the policy limit and expose the non-settling insureds to personal liability; yet, by not settling, the insurer may subject itself to greater liability beyond the policy limit – an "excess verdict" – if it loses and is found to have unreasonably refused settlement.[3] The court in Molin reasoned:

_____

[3]"When bad faith results in an excess verdict against an insured, the insurer will become 'liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured.'" DeWalt v. Ohio Cas. Ins. Co., 513 F.Supp.2d 287, 292 (E.D. Pa. 2007) (quoting Gray v. Nationwide Mut. Ins. Co., 223 A.2d 8, 10 (Pa. 1966)).

> By accepting an offer, the insurer will avoid being subjected to a liability
> exceeding the policy limits due to its rejection of a reasonable offer, and the
> settlement, as in this case, will benefit all of the insureds. . . . [by] decreas[ing] the
> total amount of liability in the underlying civil action . . . .

Id. at 199.  Therefore, the consequences of proceeding to litigation and losing creates an

obligation on the part of the insurer to "seriously entertain and accept" reasonable settlement

offers to avoid litigation.  Id. at 198.  Molin has since been relied on for the proposition that

insurers are not precluded from accepting a reasonable settlement offer that protects less than all

of the insured.  In re Rite Aid Sec. Litig., 146 F.Supp.2d 706 (E.D. Pa. 2001).

In Birth Ctr. v. St. Paul Cos., Inc., 787 A.2d 376 (Pa. 2001), the Pennsylvania Supreme

Court found bad faith where the insurer refused to settle a claim that could have been resolved

within policy limits and did not have "a bona fide belief . . . that it ha[d] a good possibility of

winning."  Id. at 379.  In this excess verdict case, the insurer's refusal to settle resulted in a jury

verdict against the insured for an amount exceeding the policy limit.  In the underlying case,

Norris v. Birth Ctr., the insurer was given multiple opportunities to settle the case within the

policy limit, three separate presiding judges recommended settlement, and the insurer's client

demanded that its insurer settle, but the insurer continuously refused, stating that it always tried

these types of cases.  Id. at 379-80.  In addition, the insured and co-defendant's counsel reported

to the insurer their estimates of a 35% to 50% chance of a successful defense at trial and a likely

verdict in excess of the policy limit.  Id. at 380.  At the final pre-trial conference, after the insurer

again rejected a settlement offer that its insured wanted it to accept, the trial judge stated that he

believed the insurer's actions were in bad faith and that it was putting its own interests ahead of

the insured.  Id.  The jury ultimately found the insured liable for approximately $4.3 million

where its policy limit was $1 million.  Id. at 381.  The insurer voluntarily indemnified the insured

for the entire verdict.  Id.

In the corresponding bad faith action brought by the insured against the insurer, the

Pennsylvania Supreme Court noted that the insurer "patently disregarded the interests of the

insured by refusing to negotiate."  Id. at 379 n.2.  The court upheld the jury's compensatory

damage award against the insurer and rejected the insurer's argument that its voluntary payment

of the excess verdict precluded a bad faith action against it.  Id. at 384.

The cases described above involve the contractual common law implied duty of good

faith.  See Maguire, 602A.2d at 895; Molin, 670 A.2d at 197; Birth Ctr., 787 A.2d at 382-83

(also discussing damages under 42 Pa. C.S. § 8371, but in the bad faith action, the jury did not

award statutory bad faith damages, only compensatory damages); see also Benevento v. Life

USA Holding, Inc., 61 F.Supp.2d 407, 424 (E.D. Pa. 1999) (discussing that in Pennsylvania a

contractual common law duty of good faith is implied in all insurance agreements, but

Pennsylvania does not recognize a common law tort cause of action for breach of duty of good

faith, which resulted in the legislature's passage of 42 Pa.C.S. § 8371).  Therefore, separate

discussion of cases involving the statutory duty of good faith is required.

## 2.    **Statutory Bad Faith**

In addition to the compensatory damages that may be awarded for a breach of the implied

duty of good faith, the Pennsylvania Unfair Insurance Practices Act, 42 Pa.C.S. § 8371,

"provides an additional remedy and authorizes the award of additional damages."  Birth Ctr., 787

A.2d at 386.  Section 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer

> has acted in bad faith toward the insured, the court may take all of the following
> actions:
> (1) Award interest on the amount of the claim from the date the claim was made
> by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.  Therefore Section 8371 "authorizes courts, which find that an insurer has

acted in bad faith toward its insured, to award punitive damages, attorneys' fees, interest and

costs." Birth Ctr., 787 A.2d 376, 386 (Pa. 2001).  In Birth Center, the Pennsylvania Supreme

Court expressly held that the statute does not prohibit the award of compensatory damages and

that the common law remedy survives.  However, the court expressed no opinion as to whether

Section 8371 creates an independent cause of action, as Defendant argues in its Reply brief, or

merely an additional remedy to award additional damages.  Id. at 386 n.14.

     In Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680 (Pa. Super. 1994), the

Pennsylvania Superior Court discussed the standard for a bad faith action pursuant to Section

8371.  It held that to recover for bad faith, the insured must show that the insurer (1) did not have

a reasonable basis for denying benefits under the policy, and (2) that the insured knew or

recklessly disregarded its lack of reasonable basis in denying the claim.  Id. at 688; see also

Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (predicting that

the Pennsylvania Supreme Court would apply the Terletsky bad faith definition to a Section 8731

claim).  In the third party context, "bad faith" encompasses the manner by which an insurer

discharges its obligations of defense and indemnification.  Toy v. Metropolitan Life Co., 928

A.2d 186 (Pa. 2007).  "Bad faith conduct also includes lack of good faith investigation into facts,

and failure to communicate with the claimant."  Brown v. Progressive Ins. Co., 860 A.2d 493,

501 (Pa. Super. 2004) (quoting Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232

(Pa. Super. 1994); citing Birth Ctr., 787 A.2d at 378; O'Donnell v. Allstate Ins. Co., 734 A.2d

901, 906 (Pa. Super. 1999)) (internal quotations omitted).  To find bad faith, the insurer's

conduct need not be fraudulent, but mere negligence or bad judgment is not bad faith.  Brown,

860 A.2d at 501.  "In other words, the plaintiff must show that the insurer breached its duty of

good faith through some motive of self-interest or ill will."  Id.

　　　　Because the standard articulated in assessing Section 8731 bad faith claims relies more on

factual determinations and questions of intent than the standard articulated for assessing

contractual bad faith, the parties here disagree as to whether a statutory bad faith claim is

applicable to this case.  The Complaint expressly pleads "42 Pa. C.S.A. §8371" in Count I for

Bad Faith.  However, Defendant argues, based on Daniel P. Fuss Builders-Contractors Inc. v.

Assurance Co. of Am., 2006 WL 2372226 (E.D. Pa. Aug. 11, 2006), that statutory bad faith

claims exist only where the insurer refuses to settle, as in Birth Center, and not where the issue is

the speed or reasonableness of settlement, as in this case.  In Fuss, the insurer delayed settling a

third-party claim where the insured admitted liability and desired settlement; however, the

insurer ultimately settled the claim the day before trial within policy limits.  Id. at *1-2.  Judge

Schiller concluded, in granting the insurer's motion to dismiss both statutory and contractual bad

faith claims, that because no court applying Pennsylvania law had ever addressed whether a

cause of action existed against an insured for delaying settlement of a third party claim, it would

not be proper to create a new cause of action.  Id. at *4-5.

　　　　Defendant asserts that Fuss recognizes that contractual bad faith and statutory bad faith

are two distinct claims and that courts should not apply bad faith liability where it has not been

previously recognized to exist.  (Def.'s Supp. Reply 3.)  Plaintiff responds that the facts in the

instant case bear no relation to Fuss, since the insurer in Fuss settled within policy limits, but

instead, that this case is analogous to an excess verdict case like Birth Center because this case

also involves exposure to an uninsured loss.  Plaintiffs assert that the statutory bad faith doctrine

has been applied to the type of situation at issue here.  (Pls.' Supp. Memo. Opp'n Def.'s Supp.

Memo. 1-2.)  In addition, Plaintiffs argue that contractual bad faith and statutory bad faith are not

two separate claims with two distinct standards; instead, they assert that determining an insurer's

good faith requires a factual assessment, and Section 8731 merely provides an additional remedy

for breach of the implied contractual duty of good faith.

     In Gideon v. Nationwide Mutual Fire Ins. Co., 2008 WL 768724 (W.D. Pa. Mar. 20,

2008), Judge Cohill rejected Judge Schiller's holding, and, in denying defendant's motion to

dismiss the statutory bad faith claim, recognized a cause of action against an insurer for delaying

its assumption of its duty to defend and instead filing a declaratory judgment action against its

insured, which it eventually lost.  Id. at *8-9; see also Standard Steel v. Nautilus Ins. Co., 2008

WL 4287156, at *4-5 (W.D. Pa. Sept. 17, 2008) (citing Fuss holding and denying motion to

dismiss statutory bad faith claim where insurer failed to reimburse the insured's investigation and

settlement of a third party claim).  The insurer in Gideon did settle the underlying lawsuit once it

lost its declaratory judgment action, but the court found that the insurer's actions amounted to a

denial of benefits, and therefore, a bad faith claim was appropriate.  Gideon, 2008 WL 768724 at

*8.

### 3.   <u>Assessment of Bad Faith Claims</u>

Based on the above case law, this Court must decide whether Plaintiff's bad faith claim should be dismissed as a matter of law, as in <u>Maguire</u> and <u>Fuss</u>.  At the outset, this Court notes that Plaintiffs have not pointed to a single case where an insurer settling "too early" has been found to be in breach of good faith.  In addition, nothing in the facts presented suggests unreasonable conduct by the Defendant.  Instead, Plaintiffs allege that Defendant voluntarily exhausted the policy limit "despite the fact that it knew or should have known that there were other potential claims," thereby "knowingly and intentionally exposing its insured to loss that would not be indemnified under the policy." (Comp. ¶ 15-16.)  Plaintiff has no facts supporting these arguments.  Plaintiff asserts, without any specifics, that there are disputed factual issues, including the reasonableness of Defendant's investigation into the policy claims, the reasonableness of the settlement offers accepted by Defendant, and the knowledge Defendant possessed in deciding to settle the initial two claims.

Federal courts in Pennsylvania generally recognize that a contractual bad faith claim and a statutory bad faith claim are entirely separate causes of action.  <u>See</u> <u>DeWalt v. Ohio Cas. Ins. Co.</u>, 513 F.Supp.2d 287, 291 (E.D. Pa. 2007) ("Bad faith by an insurance company can give rise to two separate causes of action under Pennsylvania law: a breach of contract action for violation of an insurance contract's implied duty of good faith and a statutory action under the terms of Pennsylvania's bad faith law, 42 Pa.C.S. § 8371.");  <u>Schubert v. Am. Indep. Ins. Co.</u>, 2003 WL 21466915, at *4 (E.D. Pa. 2003) ("[T]here is a consensus among both federal and state Courts that § 8371 creates an independent cause of action.").

In <u>DeWalt</u>, Judge McLaughlin performed an extensive analysis of the two types of bad

-20-

faith claims and the differing standards of what constitutes bad faith under each.  The Court will

follow the statutory bad faith standard as articulated in <u>Terletsky</u> and <u>Brown</u>, which requires an

assessment of the "reasonableness" of the insurer's conduct.  However, based on Plaintiffs'

inability to point to a case applying that standard to the facts at issue here, and Plaintiffs' inability

to specify any facts constituting bad faith, under Pennsylvania law, this Court allowed limited

discovery of Defendant's claim log and claim files, to give Plaintiffs the opportunity to review

these files to see if there was any evidence of bad faith on the part of Defendants.  If Plaintiffs

were unable to find such evidence, this Court indicated it would grant Defendant's Motion as to

all claims.  As the caselaw has established, an insurer is under no obligation to wait to settle a

claim until all possible claims have been filed.  <u>Molin</u>, 670 A.2d at 198.  This would put the

insurer in the exact "catch-22" situation of which the <u>Molin</u> court warns.

### 4.    Analysis of Supplemental Evidence

Having reviewed both Plaintiffs' and Defendant's briefing pursuant to the Court's June

12, 2009 Order, the Court concludes that Plaintiffs have failed to make any showing of bad faith

conduct on the part of the Defendant.  The claim files demonstrate that Defendant Empire

conducted a reasonable and good faith investigation into the liability regarding the accident in

question and that, based on the investigation's results, Defendant Empire acted in good faith

when entering into the settlements that exhausted Plaintiffs' policy limits.  Therefore, without

any evidence of bad faith conduct by Defendant in handling these claims, this Court will find for

Defendant.

In their recent filing, Plaintiffs do not request any further discovery.  Even if they had, the

Court would likely reject such a request because Plaintiffs' legal theory in this case is simply not

supported under current Pennsylvania law.

**B.      Additional Arguments**

Plaintiffs assert that additional factual issues exist which preclude judgment on the

pleadings.  However, as discussed below, the facts do not support Plaintiffs' arguments.

**1.      Ambiguity of Policy**

First, Plaintiffs argue that because "CSL," as stated on the Policy Declaration page as the

policy limit, is never defined in the insurance policy, its meaning is ambiguous, and therefore the

Court must construe its meaning in favor of the plaintiff.  By construing its meaning in favor of

the plaintiff, Plaintiffs claim that a factual issue exists to whether the combined policy limit is

$100,000.  Defendant counters that even though the term is not defined in the policy, it is a

standard term in the insurance industry meaning "combined single limit."

"Contractual language is ambiguous if it is reasonably susceptible of different

constructions and capable of being understood in more than one sense."  401 Fourth St., Inc. v.

Investors Ins. Group, 879 A.2d 166, 171 (Pa. 2005) (internal quotations omitted).  Plaintiffs have

pointed to no differing construction or secondary meaning of the term "CSL."  "In the absence of

an ambiguity, the plain meaning of an unambiguous written instrument presents a question of law

for resolution by the court."  Murphy v. Duquesne Univ., 777A.2d 418, 430 (Pa. 2001) (emphasis

added).  In addition, at oral argument, Plaintiffs conceded that this potential defect by itself is not

evidence of bad faith and not a reason to deny Defendant's Motion.  Because the Court is

persuaded that "CSL" is unambiguous and stands for the insurance term "combined single limit,"

there is no material factual issue as to the ambiguity of this term.

## 2. __Additional Policy Limits__

Second, Plaintiffs argue that there may be additional types of coverage under the policy, which would mean that the policy is not in fact exhausted. Plaintiffs claim that pedestrian Jones may be entitled to $5,000 in first-party medical benefits under the policy; therefore, if the settlement paid to Jones included the $5,000 in first-party benefits, $5,000 would remain under the $100,000 combined single limit, and thus, the policy would not be exhausted. Defendant countered at oral argument that Plaintiffs were mixing up the two different types of coverage by assuming that in settlement, a settling party can get a credit from one type of coverage applied to another type of coverage. Defendant asserts that this is a highly speculative argument and that first-party and liability claims are entirely separate types of coverage. In addition, Plaintiffs claim that all Pennsylvania insurance policies must include $5,000 worth of property damage coverage, which this policy does not appear to have; therefore, this required coverage would be on top of the $100,000 policy limit. Defendant responds that the $100,000 combined single limit included property damage coverage. Further, Defendant asserts that Plaintiffs' Complaint admits a $100,000 policy limit by stating, "[a]t the time of the accident the aforementioned insurance policy provided coverage in the amount of $100,000.00 for all claims arising out of the same accident" (Compl. ¶ 12), and "Defendant voluntarily exhausted the policy limits by paying a total of $100,000.00 . . . ." (Compl. ¶ 14).

This Court finds that Plaintiffs have not adequately explained their theories of additional coverage beyond the $100,000 policy limit. As stated above, the policy is unambiguous as to the $100,000 combined single limit policy, and Plaintiffs have failed to adequately explain alternative theories. In addition, Plaintiffs' own Complaint expresses its understanding that the

total policy limit was $100,000.  The Court will not torture the policy language to create

ambiguities where none exist.  See St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d

521, 524 (3d Cir. 1981).

### 3. Original Versus Renewal Policy

Third, Plaintiffs argue that the pleadings do not establish whether the governing insurance

policy is the original policy issued to NIA or, instead, is a renewal policy.  If it is a renewal

policy, Plaintiffs assert that it is enforceable only if the insured was notified of the renewal and

understood it, citing Tonkovic v. State Farm, 521 A.2d 920 (Pa. 1987).  Tonkovic states that an

insurer may not unilaterally change the coverage provided without affirmatively showing that

"the insured was notified of, and understood, the change . . ."  Id. at 455.  However, Plaintiffs'

Complaint pleads no facts that suggesting the policy was unilaterally changed from the policy for

which they applied.  Plaintiffs attached the insurance policy as Exhibit A to their Complaint, and

this policy governs their claim.  Without any facts to the contrary, the Court can not credit this

legal argument.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings has been

granted by the Order filed and entered on September 30, 2009.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

A:\Nia v. Empire - Memo Motion Judgment on Pleadings.wpd

-24-